In the Matter of the Estate of ROBERT BROWN, deceased.

Where a will is capable of two constructions, one of which will exclude
the issue of a deceased child, and the other permit such issue to par-
ticipate in a remainder, limited upon a life estate given to a parent of the
child, the latter construction should be adopted.

The will of B. gave to each of his six daughters a life estate in one-tenth
part of his residuary estate, with remainder over as follows : " Upon the
death of any or either of my said daughters I give, devise and bequeath
unto such child or children, as my said daughters shall have or leave living
at her decease, and to the heirs or assigns of such child or children as ten-
ants in common, one part or share of my said estate; the children of my said
daughters to have the share whereof the mother received the rent and
income during her life."   A son of one of the daughters died before her,
leaving issue.   *Held*, that the remainder limited upon the life estate of
each daughter vested in all of her children, subject only to open and let
in after-born children, and descendible to the heirs of any of said children
who might die before their mother ; and that, therefore, the children of
the deceased son were entitled to participate in the remainder limited
upon his mother's life estate.

(Argued June 19, 1883 ; decided October 2, 1883.)

APPEAL from order of the General Term of the Supreme
Court, in the first judicial department, made March 20, 1883,
which reversed in part an order of Special Term directing as
to the distribution of a fund held by the Farmers' Loan and

Trust Company, as trustee under the will of Robert Brown, deceased. (Reported below, 29 Hun, 412.)

The said will, after various devises and legacies by the seventh clause, directed the testator's residuary estate to be divided into ten equal shares, one of these it gave to each of the testator's four sons, the remaining six shares were disposed of as follows :

"I give and bequeath unto each of my six daughters, viz. : Ann, wife of Seabury Ely; Catharine, wife of Charles L. Clussman; Sarah, wife of Samuel B. Fleming; Maria, wife of William R. Loudon; Emeline and Louisa, for and during the term of their natural lives respectively, the rent, interest and income of one other part or share of my said estates (subject, nevertheless, as aforesaid), being the six remaining shares, and upon the death of any or either of my said daughters I give and devise and bequeath unto such child or children as my said daughters so dying shall have or leave living at their decease ; and to their heirs and assigns of such child or children forever as tenants in common, one part or share of my said estate — that is to say, the children of said daughters to have the part or share whereof their mother received the rent and income during her life."

Maria Loudon, one of the daughters named, died intestate, in 1882, leaving three children, her surviving. A son of hers had died in 1872, leaving three children. At the time of the death of Mrs. Loudon the fund, to the income of which she was entitled, was in the hands of said The Farmers' Loan and Trust Company as trustee and administrator with the will annexed. Her three surviving children demanded the fund, claiming that the children of their deceased brother had no right or interest therein, and upon refusal of said trustee to pay them, made application to the Supreme Court to compel such payment. The order at Special Term sustained their claim and directed the fund to be paid over to them. The order at General Term reversed this order so far as it excluded the children of the deceased son of Mrs. Loudon from participating in the distribution.

*D. M. Porter* for appellants. In construing a will the object of the courts is to ascertain the intention of the testator, as expressed in the language of the will. (*Abbott* v. *Middleton,* 7 H. L. C. 68; Jarman on Wills, 243; *Lowndes* v. *Lowndes,* 4 Burr. 2246; *Wylie* v. *Lockwood,* 86 N Y. 291, 300; *In re Hanfield,* L. R., 15 Ch. Div. 86; *In re Parker,* id. 525.) The words "child or children" must always be construed in their primary sense, unless there are no persons in being who answer to such description, or unless it is clearly evident that such interpretation would defeat the will of the testator. (*Palmer* v. *Thorn,* 84 N. Y. 516; *Mowatt* v. *Carow,* 7 Paige, 328; *Low* v. *Harmony,* 72 N. Y. 408; *Hone* v. *Van Schaick,* 3 id. 538.)

*James A. Deering* for respondent. The law favors a construction which will not tend to the disinheriting of heirs unless the intention to do so is clearly expressed. (*Scott* v. *Guernsey,* 48 N. Y. 120; *Low* v. *Harmony,* 72 id. 408; Bouvier's Law Dict., Legacy; 6 Ves. 102; 2 Barn. & Ald. 448; 2 Blackstone's Comm. 381; 1 Jarman on Wills, 404–412.) The words "such child or children" are not necessarily limited to the immediate offspring, but embrace grandchildren, where the other portions of the will show such intention of the testator, or such construction is necessary to carry into effect all the provisions of the will. (*Prowitt* v. *Rodman,* 37 N. Y. 42; *Scott* v. *Guernsey,* 48 id. 106; *Lawrence* v. *Hibbard,* 1 Bradf. 252; *Bowne* v. *Underhill,* 4 Hun, 130; *Ingraham* v. *Mead,* 3 Wall. Jr. 32; *Lipton* v. *Lipton,* 1 Cold. [Tenn.] 253; *Osgood* v. *Loveridge,* 33 Mc. 464; *Coles* v. *Brown,* 4 Sandf. Ch. 123; *Doe* v. *Weber,* 1 B. & Ad. 713; 4 Kent's Comm. 419, *n.;* *Earl of Lyons* v. *Mar. of Waterford,* 1 De Gex, F. & J. 637; 2 R. S. 97, § 76; *Beebe* v. *Estabrook,* 79 N. Y. 246.) The words "child or children" have been construed as synonymous with issue. (*Doe* v. *Webber,* 1 B. & Add. 713; *Wild's Case,* 6 Coke, 17; *Doe* v. *Simpson,* 3 M. & G. 929; *Parkman* v. *Bodoin,* 1 Sumner, 368.) The words "shall have" are to be construed in their ordinary and usual sense.

(30 Eng. Law & Eq. 435; *Williamson* v. *Field*, 5 Sandf. Ch. 532; *Grout* v. *Townsend*, 2 Denio, 336.) No remainder will be construed to be contingent which may be held to be vested. (*Moore* v. *Lyons*, 25 Wend. 119; *Williamson* v. *Fields*, 5 Sandf. Ch. 533; 2 Jarman on Wills [5th ed.], 200; *Weakeley* v. *Rugg*, 7 Term R. 322, 326; *Pinbury* v. *Elkin*, 1 P. Wms. 563; *White* v. *Hill*, L. R., 4 Eq. 265; *Ryden* v. *Willet*, L. R., 7 id. 472.) "Or" is never changed to "and" unless it be apparent on the face of the will that the latter was intended. (*Armstrong* v. *Mason*, 1 Bradf. 315; *Gettings* v. *McDermott*, 2 M. & K. 75; *Harrison* v. *Bowes*, 3 Jones' Eq. [No. Car.] 578.) The words "leave living at their decease" neither add to nor detract from the result of the construction to be given to the words "shall have" immediately preceding, whether the term "child or children" is to be construed as including grandchildren, or as synonymous with "issue," for the grandchildren here were "living" at the time of the decease of their grandmother, one of the daughters of the testator. (*Scott* v. *Guernsey*, 49 N. Y. 120; 22 Penn. St. 9; *Low* v. *Harmony*, 72 N. Y. 414.) The words, "and to the heirs and assigns of such child or children," manifest further the intention of the testator that the children of any "such child or children" which his deceased daughter might "have," should inherit. (*Den* v. *Manners*, 20 N. J. Law, 145; *Low* v. *Harmony*, 72 N. Y. 408; *Scott* v. *Guernsey*, 48 id. 106.) The words "forever as tenants in common" show that the testator intended to exclude survivorship among the children of his deceased daughter. (*Hyatt* v. *Pugsley*, 23 Barb. 299.)

Rapallo, J. The testator gave to each of his six daughters a life estate in one-tenth part of his estate, real and personal, with remainder over to their respective children, and the question now presented is whether this remainder was intended to vest in all the children of each daughter, or whether it was contingent upon such children surviving their mother, so that the issue of a son of one of the testator's daughters, who died

before his mother, were cut off from all participation in the remainder limited upon her life estate.

The seventh clause of the testator's will, upon which this question arises, contains language capable of the construction that the remainder was contingent upon the children surviving their mother. The language is, " And upon the death of any or either of my said daughters, I give, devise and bequeath unto such child or children as my said daughter shall *have* or *leave living at her decease*, and to the *heirs and assigns of such child or children*, as tenants in common, one part or share of my said estate, that is to say, *the children* of my said daughters to have the part or share whereof the mother received the rent and income during her life."

If, however, this language is capable of any construction which would permit the issue of the deceased son to participate in the remainder limited upon his mother's life estate, that construction should, on well-settled principles, be adopted in preference to one which should exclude them. (*Scott* v. *Guernsey*, 48 N. Y. 106 ; *Low* v. *Harmony*, 72 id. 408.)

There are several peculiarities in the form of the disposition of the remainder, which lead us to the conclusion that its true meaning is that the remainder limited upon the life estate of each daughter, should be vested in all the children of such daughter, so that upon the decease of any of such children, leaving issue, such issue would succeed to the interest of the parent in such remainder. If the intention of the testator had been to admit to participation in such remainder only such of the children of each of his daughters as should survive their mother, that intention would have been clearly expressed by omitting much of the language used, and leaving to stand only the words, " unto such child or children as my said daughters, so dying, shall leave living at their decease." But instead of leaving these simple words, the testator inserted, first, the words " have or," so as to make the sentence read unto such child or children as my said daughters, so dying, shall *have or* leave living at their decease ; second, he adds the explanatory words, " that is to say, *the children* of my said

daughters to have the part or share whereof their mother received the rent and income during her life." This clause would be quite controlling had the language been that the children of said daughters should have the part of which the income *was given* to the mother during her life, instead of whereof their mother *received* the income. For in this explanatory clause the remainder is given to *all* the children of each daughter, and no intention is manifested of restricting the gift to such of the children as should survive their mother, or of making the gift contingent upon such survivorship. Taking this explanatory clause in connection with the principal sentence giving the remainder "to such child or children as my said daughters, so dying, shall *have* or leave," etc., we think it discloses that the testator was endeavoring to express the idea that after carving out of each of the parts a life estate to each daughter, the whole remainder should vest in the children of the daughter entitled to the life estate. This would, of course, be a vested remainder which would vest in each child as soon as born, subject only to open to let in after-born children, and descendible to the heirs of any of said children who might die before their mother.

It is not incumbent upon the respondents to show that this is the necessary construction of the will. It is sufficient to show that it is reasonably capable of such construction, and although it may be equally capable of the construction claimed by the appellants, that construction should be rejected under the rule before referred to, as laid down in *Scott* v. *Guernsey* and *Low* v. *Harmony*, and kindred cases.

There are several considerations which confirm us in the view that the construction claimed by the respondents is the correct one. It is not reasonable to impute to the testator the intention to exclude wholly from the inheritance, the descendants of either of his daughters, a result which, upon the construction claimed by the appellants, would necessarily follow should such daughter leave her surviving no living child, but only the descendants of a deceased child or children, and in this point of view the words " and to the heirs and assigns of

such child or children forever," have some significance. In *Den* v. *Manners* (20 N. J. L. 145) similar words were held to mean more than the quantity of estate given, and to repel the idea of survivorship. The devise there was " to the children of my said son, David Manners, and to their respective heirs and assigns," and were held to show an intention to benefit not only David's children but the families of such of them as might die before the contingency happened upon which the children were to take. The significance of the words " have or leave," and the distinction between " having " and " leaving" are recognized in several of the authorities cited ( *Weakley* v. *Rugg*, 7 T. R. 322; *White* v. *Hill*, L. R., 4 Eq. 265; *Bryden* v. *Willett*, L. R., 7 Eq. 472), and it is not straining much to infer that the meaning of the testator was that upon the death of each of his daughters the remainder should go to the children she might have, or leave living, and their heirs and assigns; that is to say, to the living children and to the heirs or assigns of those who might have died, as tenants in common. Reading the clause (which is adapted to the singular as well as the plural number) as applied to the singular number, the reading would be " to *such child* as my daughter so dying *shall have* (or leave living at her decease) and to the heirs and assigns of *such child.*" There could be no doubt that under this reading the issue of William I. would take. The same result, however, follows from construing the ·remainder as being given to all the children of each of the testator's daughters, which from the explanatory clause seems to have been his intention.

The order should be affirmed, with costs.

All concur, except ANDREWS, J., absent.

Order affirmed.