In the Matter of the Judicial Settlement of the Accounts of NORMAN M. ALLEN, as Executor, etc., of NORMAN HOWARD, Deceased.

*Appeal from the decree of a Surrogate's Court — only the part affecting the appellant will be considered — when children of a legatee dying in the testator's lifetime do not take — intention of the testator.*

Where an appeal is taken from certain portions of a decree of a Surrogate's Court settling the accounts of an executor, and directing the distribution of the residuary estate of the testator, only those portions of the decree appealed from, in which the appellant has an interest, will be considered by the General Term.

A testator directed, by his last will and testament, that, upon the termination of a trust estate thereby created, his residuary estate should go to his sisters and their heirs and assigns, and to the children of any deceased brother and their heirs and assigns.

Fifth Department, October Term, 1894.            [Vol. 81.

*Held*, that the son of a sister of the testator was not entitled to share in the residuary estate of the testator if his mother (the sister) was dead at the time of the making of the will.

The principal thing to be ascertained in the construction of a clause in a will is the intention of the testator, which should be ascertained, if possible, from the plain import of the terms employed in the will.

Appeal by Charlotte Kavanaugh, one of the legatees named in the last will and testament of Norman Howard, deceased, from that portion of a decree of the Surrogate's Court of the county of Cattaraugus, made on the 1st day of March, 1893, and entered in the Cattaraugus County Surrogate's Court, settling and allowing the accounts of the executor of the said deceased, and directing the distribution of the residuary estate of the said deceased, by which it was adjudged and determined that it was the design of the testator that the respondent Henry Milk should share in the residuum of the said estate, and that the amount paid to Emeline Parsell, a legatee, be charged to her individually, and that she was not entitled to the same as executrix of Harry Howard, deceased.

*J. E. Bixby*, for the appellant.

*W. H. Henderson*, for the respondent Henry Milk.

Dwight, P. J. :

Two provisions of the decree are specified in the notice of appeal, only one of which has any effect upon the distribution of the residuary estate, so far as the sole appellant is concerned, and it does not appear that she has any interest in the question which arises on the other of the two provisions specified; whereas the residuary legatee, whose interest is directly affected by the last-mentioned provision, does not appeal from it, but appears generally as a respondent on this appeal. We shall, therefore, confine our attention to that portion in which alone, so far as appears, the appellant has any interest on which to base an appeal. That is the provision by which a share of the residuary estate is awarded to the respondent Henry Milk.

The facts bearing on this branch of the case are as follows: Norman Howard, the testator, died in 1866, at the age of twenty-nine years, leaving a widow but no children, a father, mother and three sisters. There were also living at the time of his death, and

at the time of the execution of his will, a son of a deceased sister (the respondent Henry Milk) and three children of a deceased brother.

By the second section of his will he gave the use of his farm, or — in case the farm should be sold under a power conferred upon his executors — the use of the avails, to his widow during her life, or one-half of such use in case she should marry again. He then made several pecuniary bequests and followed them by a residuary clause as follows :

" *Seventh.* At the decease of my said wife all the rest and residue and remainder of my said estate, after paying the bequests before made, shall descend to my father, Harry Howard, if he shall then be living, and if he shall not be living at the time of the decease of my said wife, then the same shall descend to my mother, Delilah Howard, if she shall then be living, and if she shall not then be living, then the same shall descend to my sisters and their heirs and assigns, and to the children of my deceased brother and their heirs and assigns. The children of any of my sisters or of my brother are only to receive the same share that my brother or sisters would receive if they were living at the decease of my said wife."

The father and mother of the testator both died before the widow ; and she died in 1890, leaving, surviving her, the other relatives of the testator as at the time of the execution of his will, viz., three sisters, the son of the deceased sister and the children of the deceased brother.

The learned surrogate held and decided that the residuary estate should be divided into five equal parts to be distributed, one part each to each of the three sisters, and one part to the son of the deceased sister, Henry Milk, and one part to be divided among the three children of the deceased brother.

We think the decree in this respect was erroneous for the reason that the case of the sister already deceased at the date of the will was not included within the terms of the will or the intention of the testator as expressed in the seventh or residuary section above quoted. The language is " to my sisters and their heirs and assigns, and to the children of my deceased brother and their heirs and assigns." It is evident that the word " sisters " as here used did not include the sister then deceased, because the gift was to them, the words " and

their heirs and assigns" being words of inheritance merely. He did not give a share of his property to his deceased brother and his heirs and assigns, which he might as well have done as to include his deceased sister among those who were the objects of his bounty. The gift is to his sisters and to the children of his deceased brother, all persons in being at the time his will was made; and by the subsequent clause of the same section, as already quoted, he made provision for the case which would arise if any of his sisters should die after the execution of the will and before the death of his widow, to the effect, viz., that their children in such case should take *per stirpes* and not *per capita*.

Of course the one thing to be ascertained, if possible, in the construction of the clauses of this, as of any other will, is the intention of the testator, and this first of all, if possible, from the plain import of the terms employed; in this case it seems scarcely necessary to go beyond that first canon of construction. Here the testator gives a share of his residuary estate to each of his sisters — of course his living sisters, he cannot give to any others — and to their heirs and assigns. These are the only sisters mentioned, and there seems to be no language employed which can include the deceased sister or her son. The deceased brother is mentioned as such, and the gift is not to him and his heirs and assigns, but to his children and their heirs and assigns. Had the son of the deceased sister been included in the purpose of the testator, he might as easily have been described as such.

The son of the deceased sister not being within the plain import of the terms of the will, he cannot be brought within its provisions by virtue of any presumption arising from his relationship to the testator. All the authorities referred to by the learned surrogate and by counsel in support of a presumed disinclination to disinherit the heir relate to the case of children or other direct descendants, and none of them to collateral relatives. Such are the cases of *In re Brown* (93 N. Y. 299); *Low* v. *Harmony* (72 id. 408); *Scott* v. *Guernsey* (48 id. 106), and *Matter of Paton* (111 id. 480).

Nor is there anything in the evidence *aliunde* the will itself which aids the contention of the respondent. There is but little of such evidence, but it appears that his deceased sister, the mother of Henry Milk, died more than twenty years before the will was made,

and when the testator was a child of not more than eight years of age, and that her son, Henry Milk, was a man of nearly, if not quite, the age of the testator, and the father of a son whose age is not stated, in whose favor the testator made a pecuniary bequest. These circumstances may or may not account for the discrimination between Henry Milk and the children of the deceased brother. It is sufficient to say that they are not inconsistent with the discrimination which is actually made by the terms of the will.

The proposition in the argument of counsel, that the children of the deceased sister, as well as of the deceased brother, take as primary legatees, and not by substitution or representation, is entirely untenable. It would not have been true of the children of either of the three living sisters had either of them died before the death of the widow. Those living sisters were by the plain terms of the will the primary legatees of three shares of the estate, and their children, had any of them died, could have taken by no other means than by substitution or representation, and that *per stirpes* as indicated by the last clause of section 7 of the will; and in regard to the son of the deceased sister, we have stated our reasons for the conclusion that he is neither by original mention nor by substitution or representation embraced within the provisions of the will.

These views lead to a reversal of that part of the decree which awards a share of the residuary estate to the respondent, Henry Milk, and its affirmance in all other respects. This will result in a modification of the decree in such manner as to give to each of the living sisters one-fourth of the estate and each of the children of the deceased brother one-twelfth.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Decree appealed from modified as indicated in the opinion, and as so modified affirmed, without costs of this appeal to either party.