(81 Hun, 91.)

## In re HOWARD'S ESTATE.

### In re ALLEN.

(Supreme Court, General Term, Fifth Department.    October 17, 1894.)

WILLS—CONSTRUCTION—CHILDREN OF DECEASED LEGATEES.

Testator, after giving his widow a life estate, bequeathed the residue as follows: "To my sisters and their heirs and assigns, and to the children of my deceased brother and their heirs and assigns. The children of any of my sisters or of my brother are only to receive the same share that my brother or sisters would receive if they were living at the decease of my said wife." *Held*, that a son of a sister, who had died before testator, did not take anything under the will. 23 N. Y. Supp. 836, reversed.

Appeal from surrogate's court, Cattaraugus county.

Judicial settlement of the accounts of Norman M. Allen as executor of the will of Norman Howard, deceased. From portions of a decree relating to the distribution of the residuary estate (23 N. Y. Supp. 836), Charlotte Kavanaugh, a residuary legatee, appeals. Modified.

Argued before DWIGHT, P. J., and LEWIS, HAIGHT, and BRADLEY, JJ.

J. E. Bixby, for appellant.
W. H. Henderson, for respondents.

DWIGHT, P. J.    Two provisions of the decree are specified in the notice of appeal, only one of which has any effect upon the distribution of the residuary estate, so far as the sole appellant is concerned, and it does not appear that she has any interest in the question which arises on the other of the two provisions specified; whereas, the residuary legatee, whose interest is directly affected by the last-mentioned provision, does not appeal from it, but appears generally as a respondent on this appeal. We shall therefore confine our attention to that portion in which alone, so far as appears, the appellant has any interest on which to base an appeal. That is the provision by which a share of the residuary estate is awarded to the respondent Henry Milk. The facts bearing upon this branch of the case are as follows: Norman Howard, the testator, died in 1866, at the age of 29 years, leaving a widow, but no children, a father, mother, and three sisters. There were also living at the time of his death, and at the time of the execution of his will, a son of a deceased sister (the respondent Henry Milk)

and three children of a deceased brother. By the second section of his will he gave the use of his farm, or, in case the farm should be sold under a power conferred upon his executors, the use of the avails, to his widow, during her life, or one-half of such use in case she should marry again. He then made several pecuniary bequests, and followed them by a residuary clause, as follows:

"Seventh. At the decease of my said wife, all the rest and residue and remainder of my said estate, after paying the bequests before made, shall descend to my father, Harry Howard, if he shall then be living; and, if he shall not be living at the time of the decease of my said wife, then the same shall descend to my mother, Delilah Howard, if she shall then be living; and, if she shall not then be living, then the same shall descend to my sisters and their heirs and assigns, and to the children of my deceased brother and their heirs and assigns. The children of any of my sisters or of my brother are only to receive the same share that my brother or sisters would receive if they were living at the decease of my said wife."

The father and mother of the testator both died before the widow, and she died in 1890, leaving, surviving her, the other relatives of the testator, as at the time of the execution of his will, viz. three sisters, the son of the deceased sister, and the children of the deceased brother. The learned surrogate held and decided that the residuary estate should be divided into five equal parts, to be distributed one part each to each of the three sisters, and one part to the son of the deceased sister, Henry Milk, and one part to be divided between the three children of the deceased brother. We think the decree in this respect was erroneous, for the reason that the case of the sister already deceased at the date of the will was not included within the terms of the will or the intention of the testator, as expressed in the seventh or residuary section above quoted. The language is, "to my sisters and their heirs and assigns, and to the children of any deceased brother and their heirs and assigns." It is evident that the word "sisters," as here used, did not include the sister then deceased, because the gift was to them, the words "and their heirs and assigns" being words of inheritance merely. He did not give a share of his property to his deceased brother and his heirs and assigns, which he might as well have done as to include his deceased sister among those who were the objects of his bounty. The gift is to his sisters and to the children of his deceased brother, all persons in being at the time his will was made; and by the subsequent clause of the same section, as already quoted, he made provision for the case which would arise if any of his sisters should die after the execution of the will, and before the death of his widow, to the effect, viz. that their children, in such case, should take per stirpes, and not per capita. Of course the one thing to be ascertained, if possible, in the construction of the clauses of this as of any other will, is the intention of the testator, and this, first of all, if possible, from the plain import of the terms employed. In this case it seems scarcely necessary to go beyond that first canon of construction. Here the testator gives a share of his residuary estate to each of his sisters (of course, his living sisters; he cannot give to any others), and to their heirs and assigns. These are the only sisters mentioned, and there seems to be no

language employed which can include the deceased sister or her son. The deceased brother is mentioned, as such; and the gift is not to him, and his heirs and assigns, but to his children and their heirs and assigns. Had the son of the deceased sister been included in the purpose of the testator, he might as easily have been described as such. The son of the deceased sister not being within the plain import of the terms of the will, he cannot be brought within its provisions by virtue of any presumption arising from his relationship to the testator. All the authorities referred to by the learned surrogate and by counsel in support of a presumed disinclination to disinherit the heir, relate to the case of children or other direct descendants, and none of them to collateral relatives. Such are the cases of In re Brown, 93 N. Y. 299; Low v. Harmony, 72 N. Y. 408; Scott v. Guernsey, 48 N. Y. 106; and In re Paton, 111 N. Y. 480, 18 N. E. 625. Nor is there anything in the evidence aliunde the will itself which aids the contention of the respondent. There is but little of such evidence, but it appears that his deceased sister, the mother of Henry Milk, died more than 20 years before the will was made, and when the testator was a child of not more than 8 years of age, and that her son, Henry Milk, was a man of nearly, if not quite, the age of the testator, and the father of a son whose age is not stated, in whose favor the testator made a pecuniary bequest. These circumstances may or may not account for the discrimination between Henry Milk and the children of the deceased brother. It is sufficient to say that they are not inconsistent with the discrimination which is actually made by the terms of the will. The proposition in the argument of counsel that the children of the deceased sister as well as of the deceased brother take as primary legatees, and nôt by substitution or representation, is entirely untenable. It would not have been true of the children of either of the three living sisters, had either of them died before the death of the widow. Those living sisters were, by the plain terms of the will, the primary legatees of three shares of the estate, and their children, had any of them died, could have taken by no other means than by substitution or representation, and that per stirpes, as indicated by the last clause of section 7 of the will; and, in regard to the son of the deceased sister, we have stated our reasons for the conclusion that he is neither by original mention, nor by substitution or representation, embraced within the provisions of the will. These views lead to a reversal of that part of the decree which awards a share of the residuary estate to the respondent Henry Milk, and its affirmance in all other respects. This will result in a modification of the decree in such manner as to give to each of the living sisters one-fourth of the estate, and to each of the children of the deceased brother one-twelfth. All concur.

So ordered, with costs to the appellant, payable out of the fund.