---

(18 App. Div. 211.)

## In re MARSHALL'S WILL.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

WILLS—CONSTRUCTION AS TO BENEFICIARIES.
    A testator left a widow, six children, and a grandson by a deceased son.
The testator's relations with the deceased son and his family were friendly,
and he had conveyed an estate in trust for the son's widow during her life,
with remainder over to the grandson. The estate was worth $12,000, and
produced an income of $1,000 a year. The residuary clause of the will
provided for an annuity to the testator's widow and each of the six chil-
dren (naming them) till the widow's death. It provided that the trustees
should then divide the estate "into as many equal parts as I shall then have
of my above children, or the lawful issue of any deceased child living,"
and "pay over the income of one of such equal parts to each of my said
children, or to its or their issue as aforesaid," till final distribution. Held,
that the grandson was entitled to share in the estate after the death of the
testator's widow.

Appeal from surrogate's court, Westchester county.

In the matter of the judicial settlement of the account and proceed-
ings of Stephen Duncan Marshall and another, trustees under the last
will and testament of Levin R. Marshall, deceased. From the decree
entered, the trustees and a beneficiary under the will appeal. Af-
firmed.

The testator, Levin R. Marshall, died on July 23, 1870, leaving a last will
and testament, which he executed on the day of his death. He left a widow,
Sarah E. Marshall, and six children, namely, George M. Marshall, Josephine E.
Ogden, William St. John Elliott Marshall, Mary D. Marshall, John N. Marshall,
and Stephen Duncan Marshall. Another child, Levin R. Marshall, Jr., had
died about two years before the testator, leaving a son, named Dunbar Mar-
shall, who was the objector in the present proceeding, and is the respondent
on this appeal. The testator's relations with his son Levin and his grandson
Dunbar were friendly; and, four months before he died, the testator conveyed
a plantation in Mississippi to a trustee in trust for the mother of Dunbar,
during her lifetime, with remainder over to the son, upon her death. The
value of this plantation was about $12,000, and the income therefrom was
about $1,000. The principal of the estate of Levin R. Marshall which came
into the hands of the trustees under his will was upward of half a million
dollars. The portions of the will material to be considered are in the fifth,

article thereof, and are as follows: "All the rest, residue, and remainder of my said estate, of every nature and kind, wheresoever situate, I give, devise, and bequeath to my executors hereinafter named, or to such of them as shall qualify and assume the execution of this, my will, their successor or successors, upon the following trusts, that is to say: Upon the trust, out of the income of my said estate, to pay during the lifetime of said wife the sum of two thousand dollars ($2,000) per annum, by equal semiannual payments (the first payment to be at the end of six months from my decease), to each of my six children, George M. Marshall, Josephine E. Ogden, William St. John Elliott Marshall, Mary D. Marshall, John N. Marshall, and Stephen Duncan Marshall, or to the child or children of any of my said children who may die during my lifetime or the lifetime of my said wife, such child or children of such deceased child of mine taking the said two thousand dollars per annum in place of its or their parent, per stirpes and not per capita. And upon the further trust to pay all the balance and remainder of the income of my estate to my said wife annually during her life. And upon the further trust, after the death of my said wife, to reduce my estate into money or interest-bearing securities; and thereupon to divide and set apart the same into as many equal parts as I shall then have of my above children, or the lawful issue of any deceased child, living (the issue of any deceased child, if more than one, to count as one in making such division); and to pay over the income of one of such equal parts to each of my said children, or to its or their issue, as aforesaid, during the lifetime of the youngest of my said children, who shall be living at the time of my decease or the decease of my said wife, if she survive me; and after the death of the said the youngest of my said children who may be living at the time of my decease or decease of my said wife, if she survive me, upon the further trust to divide and distribute my said estate equally between my said children and the lawful issue of any deceased child who may have died leaving such issue, per stirpes and not per capita; but from the share set apart for my son George M. Marshall there shall be deducted, and divided between his brothers and sisters, or their issue, as aforesaid, the sum of twenty-five thousand dollars, because of the large advances I have already made to him." The widow of the testator died on February 5, 1895. The objector, Dunbar Marshall, insisted that, after her death, he was entitled to share in the income of his grandfather's residuary estate, and this claim was sustained by the surrogate.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Wheeler H. Peckham, for appellant trustees.
James F. Horan, for appellant George M. Marshall.
John L. Cadwalader, for respondent, Dunbar Marshall.

WILLARD BARTLETT, J.   The testamentary provisions which we are called upon to consider in this litigation relate to the disposition of the residuary estate of Levin R. Marshall (1) during the lifetime of the testator's widow, (2) during the lifetime of the youngest of the testator's children who was living at the time of the decease of the widow, and (3) upon the death of such youngest child, when final distribution is directed to be made. No question as to the proper construction of the will appears to have arisen during the first of these periods. The bequests of $2,000 a year apiece were to the children who were named in the will, or to the issue of any of such named children who might die during the lifetime of the testator or his widow. Six children were thus named. There had been another child of the testator's marriage, Levin R. Marshall, Jr., the father of Dunbar; but he was dead at the time the will was made, and it contains no mention of him by name. No claim existed against the

estate, therefore, on the part of Dunbar, the grandson, so long as the testator's widow was alive. The second period, however, began at the time of the death of the widow, on the 5th day of February, 1895, from which date the respondent, Dunbar Marshall, claims to be entitled to share in the income; and we agree with the learned surrogate and with the counsel for the respondent that the language of the will in relation to this period is by no means plain or easy of interpretation. After the death of the widow, the trustees are directed— First, to reduce the estate into money or interest-bearing securities; secondly, to divide it "into as many equal parts as I shall then have of my above children, or the lawful issue of any deceased child, living"; and, thirdly, "to pay over the income of one of such equal parts to each of my said children, or to its or their issue as aforesaid," during the lifetime of the youngest of the children who shall survive the testator or his widow. The phrase "my above children," in the clause directing the separation of the estate into equal parts, plainly refers to the children previously named in the will; but no such limitation applies to the subsequent clause providing that "the lawful issue of any deceased child" is to be represented in the division. This language is broad enough to include Dunbar Marshall, who is the lawful issue of Levin R. Marshall, Jr., a deceased child of the testator. The subsequent direction to pay over, however, is "to each of my said children, or to its or their issue as aforesaid," in which phrase the word "said" indicates an intention to restrict the gift to the children named in the will, and to the issue of the children so named. We have, therefore, an apparent conflict between the intention of the testator as expressed in the direction to divide and his intention as expressed in the direction to pay over the income after the division; and the question is, which intention should prevail?

It is putting the case quite as strongly as it can fairly be stated for the appellants to say that the language of the fifth article of the will as a whole is as capable of one construction as of the other. Under these circumstances, that interpretation is to be preferred which will permit the issue of all the children of the testator to share equally in his bounty. In re Brown's Estate, 93 N. Y. 295; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515. The conveyance of the Mississippi plantation in trust for Dunbar Marshall's mother for life, with remainder over to him upon her death, is an extrinsic fact tending to show that the testator meant to distribute his property with substantial equality; this gift being offset, as the learned surrogate suggests, by the testamentary annuities to the children named in the will. There was nothing in the relations of Dunbar Marshall or his father with the testator to occasion any distinction or discrimination against him, and in favor of the other grandchildren. The testator appears to have been on terms of amity with all his children and grandchildren alike; and, in the absence of any clear expression or implication necessarily leading to that result, we should avoid a construction of the will which would disinherit this one grandchild. "That meaning is to be preferred which inclines to the side of the inheritance of the children of a deceased child." Scott v. Guernsey, 48 N. Y. 106, 121. We are well aware that quite an-

other view of this will may readily be taken, and that it is impossible to say with absolute certainty that the construction adopted by the surrogate represents the intention of the testator. All that we can assert is that the probabilities of the case seem to us to preponderate in favor of his conclusion, and lead us to sustain it.

The decree appealed from should be affirmed.    All concur.