RICHARD SCHOONMAKER GREENE and Another, Infants, by RICHARD T. GREENE, Their Guardian ad Litem, Plaintiffs, v. EDNA GREENE HOLBROOK and Others, Defendants.

Supreme Court, New York County, January 7, 1927.

Wills — construction — testator after giving his property to his son for life, directed that on said son's death it should go to testator's " grandchildren or child, if there are any living. If there are none living, then to my legal heirs in a legal way "— one grandchild died five years before his father, testator's son — testator intended grandchildren should have property, subject to life estate in son — testator's great grandchildren take share of grandchild dying before life tenant — share of deceased grandchild did not vest in surviving grandchild on his death before his father — partition — complaint by testator's great grandchildren for partition of real property, title to half of which plaintiffs allege is vested in them, states cause of action.

The testator, after giving all his property to his son for life, directed that, upon said son's death, the property should go to testator's " grandchildren or child, if there are any living. If there are none living, then to my legal heirs in a

49

legal way." When the will was executed the testator's son, the life tenant, had two children, a son and a daughter, testator's grandchildren. Testator's grandson had two children, a son and a daughter, testator's great grandchildren The grandson died five years before his father, the life tenant. The testator must be deemed to have intended, upon the death of his son, the life tenant, to devise the property to his " grandchildren or child of them " and not to his grandchildren or grandchild.

Under this interpretation, the testator's great grandchildren took the share of their respective parents in the event of said parents' death before that of the life tenant; therefore, the share of the grandchild who died before the decease of his father, testator's son, did not vest in said grandchild's sister as the surviving grandchild.

Accordingly, the complaint in this action for a partition of the real property belonging to the testator, title to half of which plaintiffs, children of testator's deceased grandchild, allege is vested in them by virtue of testator's will, is not subject to a motion for dismissal made by testator's surviving grandchild on the ground that the share of her brother accrued to her under the will on his death.

Motion by defendant for judgment on the pleadings dismissing the complaint.

*Greene & Hurd* [*Richard T. Greene, George L. Hubbell, Jr.*, and *Malcolm C. Law* of counsel], for the plaintiffs.

*Clarence De Witt Rogers*, for the defendants Edna Greene Holbrook and others.

Bijur, J. The complaint asks for a partition of certain realty, title to half of which is alleged to have vested in the plaintiffs under the will dated March 4, 1884, of William W. Greene, who died in 1894. The clause of the will requiring interpretation in order to determine plaintiff's title is as follows: " After paying all my just debts and funeral expenses I give, devise and bequeath to my son, Richard H. Greene, for his use during his life all my property, goods and chattels of every kind, both real and personal, with privilege to manage the same to the best of his opinion, to sell, dispose or exchange as he may think best for the estate. After the death of my son R. H. Greene I will it to go to my grand children or child, if there are any living. If there are none living, then to my legal heirs in a legal way."

When the will was executed (1884) the testator's son Richard, the life tenant, had two children, testator's grandchildren, Marshall, aged fourteen, and Edna, aged ten years. No further children were born to Richard, the life tenant, who died in 1926. Marshall had two children, Mary and Richard, testator's great grandchildren and the infant plaintiffs in this action. The controversy arises because the grandson Marshall died in 1921, five years before his father, the life tenant. Defendant Edna (now Edna G.

Holbrook) claims that Marshall's remainder was divested by his death before his father's and accrued under the express terms of the will to herself, the surviving grandchild of the testator. The will was drafted and executed by testator, a layman, without professional advice or assistance.

My first impression on hearing defendant's interpretation of the provisions of this will was that to construe it thus violated the well-known canon of interpretation that the heir is not to be regarded as disinherited without a distinct expression to that effect. The rule, of course, is based on the experience of mankind that the natural instinct of the head of a family is, in the absence of special circumstances, to provide for the future of the direct line of descent. The application of this rule frequently determines the resolution of perplexing questions of interpretation. It is formulated in one of the earlier cases (*Low* v. *Harmony*, 72 N. Y. 408, 414) as follows: "The limitation in question is undoubtedly capable of the construction placed upon it at General Term, and a forcible argument may be made in its favor. But it is also capable of the construction we place upon it, and we have adopted it upon the principle that when the language of a limitation is capable of two constructions, one of which would operate to disinherit a lineal descendant of the testator, while the other will not produce that effect, the latter should be preferred. An intention to disinherit an heir, even a lineal descendant, when expressed in plain and unambiguous language, must be carried out; but it will not be imputed to a testator by implication, nor when he uses language capable of a construction which will not so operate."

The next consideration which impressed upon me the need of studying the will more closely was that ordinarily "words or phrases denoting time, such as when, then, and 'from and after,' in a devise of a remainder, limited upon a particular estate determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting." (*Hersee* v. *Simpson*, 154 N. Y. 496, 500; *Corse* v. *Chapman*, 153 id. 466; *Connelly* v. *O'Brien*, 166 id. 406; *Matter of Hitchins*, 120 Misc. 586.) Applying these two rules, it seems to me that plaintiff's construction should prevail, to wit, that the meaning of the testator should be held to be in substance that he devised the property to his grandchildren subject to the life estate of their father, and that the words "if there are any living" must be referred to the death of the testator and not to the termination of the life estate. Against this defendant urges that the succeeding phrase "if there are none living, then to my legal heirs in a legal way" must relate to the same

point of time, and that it was fairly absurd to assume that the testator intended that if he had no descendants other than his son at the time of his own death that his son, who was by the will given a life estate, should, as testator's sole heir, thereby become invested with the fee. Without entering into an elaborate discussion of this phase of the matter I may say that I do not think that that result can fairly be regarded as eccentric or even remarkable. There seems to me to be no reason why the testator might not naturally have felt that in the absence of descendants of his son living at his own death the son should be invested with the fee simple rather than with a mere estate for life. Defendant, however, presented as a more persuasive consideration the significance of the words "or child," which he interpreted as "grandchild," as indicating that the estate "was to go to the son for life and on the son's death to teastator's grandchildren or grandchild if any survived, and if none survived, then to his legal heirs," reading the word "child" as "grandchild" and as denoting in connection with the words "if there are any living" a clear provision for survivorship after the son's death. Even in the face of this additional contention I remain of the impression that the language of the will was not sufficiently clear, to say the least, in support of defendant's view to overcome the force of the application of the two rules to which I have above adverted. Defendant relied largely on *Patchen* v. *Patchen* (121 N. Y. 432) and *N. Y. Life Ins. Co.* v. *Winthrop* (237 id. 93).

In these cases the language is markedly different from that employed in the Greene will case. In the *Patchen* case the testator provided that said third shall go " to my children equally who may then be living." It was held that the issue of the deceased children took nothing. This was natural in view of the stress which has been laid in cases dating so far back as *Edwards* v. *Hammond* (3 Lev. 132 [1683]), and *Festing* v. *Allen* (12 M. & W. 279 [1843]), on the difference between the words "if" and "who." The "if" clauses in *Edwards* v. *Hammond* were held to denote a mere condition subsequent and not a description of the beneficiary. On the other hand, in *Festing* v. *Allen*, where the gift was to every child "who shall attain the age of twenty-one years" the "who" clause was held to be part of the description of the beneficiaries and thus to prescribe a survival so that there could be no vesting at all until the age of twenty-one was reached. *Patchen* v. *Patchen* represents the classical view that "who may then be living" is language of description and hence survivorship. Contrariwise, "if there are any living" are words of contingency,

not of description. To interpret fully the nature of the divesting condition subsequent which was in our testator's mind the words must be read in connection, not with " grandchildren or child," but with the other language of contingency " if there are none living."

As for *N. Y. Life Ins. Co.* v. *Winthrop*, I do not see its applicability to the case at bar, but in any event the court specifically said " whether the same construction would be appropriate if the ultimate remainder had been given, not to the next of kin of the daughter, but to those of the testator, we need not now determine." It will be remembered that the ultimate remainder in the Greene will was to the legal heirs of the testator.

As a matter of precedent alone (so far as precedents may be applied usefully in will cases) there are a number of persuasive authorities in favor of plaintiff's view, notably in *Matter of Brown* (93 N. Y. 295), referring back to *Scott* v. *Guernsey* (48 id. 106) and *Low* v. *Harmony* (72 id. 408). I appreciate that in the interpretation of wills, particularly where drawn by a layman, precedents are rarely authoritative. John Dunning, later Lord ASHBURTON, is quoted in 1 Evans' Decisions of Lord Mansfield (1803, p. 284) as having said that " the nonsense of one man can furnish no rule for understanding the nonsense of another." But, says Mr. Evans, " this observation is subject to a qualification mentioned by Lord MANSFIELD (1 Burr. 228), that in the construction of wills adjudged cases may very properly be argued from if they establish general rules of construction."

In the *Brown* case the will gave to each of six daughters a life estate in one-tenth part of the residuary estate with remainder over as follows: " Upon the death of any or either of my said daughters, I give, devise and bequeath unto such child or children as my said daughter shall have or leave living at her decease, and to the heirs and assigns of such child or children, as tenants in common, one part or share of my said estate, that is to say, the children of my said daughters to have the part or share whereof the mother received the rent and income during her life." A son of one of the daughters predeceased his mother, leaving issue. It was held that the remainder limited upon the life estate of such daughter vested in all of her children subject only to open and let in after-born children, that it was descendible to the heirs of any of said children who might die before their mother, and that, therefore, the children of the deceased son were entitled to participate in the remainder limited upon his mother's life estate. This is almost our case. The court said: " Where a will is capable of two constructions, one of which will exclude the issue of a deceased child, and the other permit such issue to participate in a remainder, limited upon

Supreme Court, January, 1927. [Vol. 128

a life estate given to a parent of the child, the latter construction should be adopted. \* \* \* It is not incumbent upon the respondents to show that this is the necessary construction of the will. It is sufficient to show that it is reasonably capable of such construction, and although it may be equally capable of the construction claimed by the appellants, that construction should be rejected under the rule before referred to, as laid down in *Scott* v. *Guernsey* and *Low* v. *Harmony*, and kindred cases."

RAPALLO, J., who wrote for the court, was at pains to suggest various forms of language which the court might consider sufficient to show an intention of the testator to divest his descendants, *e. g.*, " unto such child or children as my said daughters, so dying, shall leave living at their decease." Needless to say the language of Greene's will measures up to no such standard. To the same general effect, see *Pfender* v. *Depew* (136 App. Div. 636); *Byrnes* v. *Stilwell* (103 N. Y. 453); *Corse* v. *Chapman* (153 id. 466); *Matter of Brown* (154 id. 313) and *Matter of Watts* (68 App. Div. 357).

My trouble, however, with this interpretation arises from the fact that in its last analysis it would attribute to the testator (who as matter of fact was no doubt ignorant of the existence of section 29 of the Decedent Estate Law, as amd. by Laws of 1912, chap. 384) the same unnatural intention to disinherit some of his lineal descendants upon the mere casual contingency that their parent did not survive him. Indeed, the saving effect of section 29 would by the interpretation assumed be held to have been expressly overcome. In face of these conflicting influences and considerations in favor of or against the respective theories of the contending parties, I feel impelled to examine testator's language more carefully in order to ascertain whether further light upon his intentions might not be gathered from the bare text. Both counsel concur in the view that the words " or child " should be read " or grandchild," thus interpreting the phrase " to my grandchildren or child " as meaning " to my grandchildren or grandchild."

My own difficulty has been to reconcile the language so interpreted either literally or as a matter of continuous thought with the following phrase, " if there are any living."

Be it remembered that I am not commenting upon the language of the testator as though he were a stylist or an English scholar, but from the standpoint of common thought and usage. First I find that the language " to my grandchildren or grandchild " is very unusual. In ordinary usage the plural would include the singular, but the singular not the plural. It is rather difficult to frame either a thought or a sentence in which it would become

necessary or even apt to say grandchildren or grandchild, since the former would include the latter. But I am mindful of defendant's contention that the very use of this word in the singular is significant of the intent to express survivorship when coupled with the following phrase, " if there are any living." To my mind, however, that suggestion is still less acceptable from the standpoint of the ordinary use of the English language. The testator probably had in mind the fact that he had two grandchildren. If defendant's general contention be accepted he must have anticipated that one of them might predecease his son, and in this contingency, according to defendant, he desired to emphasize the survivorship of a *single* grandchild out of the two, yet he added " if there *are any* living." This is neither a natural nor an apt phrase to express the thought " if there be only one living." While it is true that the word " any " may be used to define (according to the dictionary) " one indifferently out of a number," the meaning " with special reference to quantity " is " one *or some,* however great or small in quantity or number." The testator made it clear in the simplest and commonest terms which he could employ that he was referring to more than one person for he said, " if there *are any* living." Even assuming, therefore, that he might have been sufficiently aware of that nicety of language which allows the use of the word " any " as indicating " one," his addition of the verb in the plural seems to me a convincing indication that he had in mind as living or surviving at some time a number of persons. In other words, the phrase " if there are any living " implies naturally and generally the existence of more than one person. Judged, therefore, by the language alone, I have, to say the least, very serious doubt whether the testator intended by the words " or child, if there are any living " to indicate the survivorship of *one grandchild*. Had he said " to my grandchildren or grandchild," which is what defendant urges, namely, that testator desired to emphasize the possibility that *but one* of his two *grandchildren* might survive the father, even an illiterate layman would hardly add the conditional phrase, palpably referring to a plural, " if there *are any* living." Assuming that any qualification were necessary, he would say " if there be but one living."

I may add in passing that the significance of the use of a word in the plural was recognized by the Court of Appeals in *Matter of Paton* (111 N. Y. 480, 487).

That my analysis of the obstacles to be encountered in interpreting the word " child " as meaning " grandchild " is not wholly baseless, is exemplified unconsciously no doubt — indeed instinctively — by defendant's counsel in his attempts to paraphrase

the language of the testator in order to illustrate his own interpretation thereof. His paraphrases are instinct with the need of introducing words of survivorship either expressly or by the substitution of " who " for " if," and of changing the phrase " if there are any living " from the plural into the singular as, for example, " to his grandchildren or grandchild if any survive." Thus he says: " Defendant contends that as she was the *sole* grandchild of William W. Greene living at the time of the death of Richard Henry Greene, she is entitled under the terms of William Greene's will to his entire estate, both real and personal;" again, " it was to go to his son for life and on his son's death to his grandchildren or grandchild *if any* survived, and if none survived then to his legal heirs;" at another point, " the natural reading of the will at bar without reference to technical rules of law is that after the death of Richard H. Greene the entire estate passes absolutely to the *one grandchild who* survived Richard H. Greene, Edna Greene Holbrook;" and finally, " the will then reads clearly ' after the death of my son R. H. Greene, I will it to go to my grandchildren or *the survivor of them who* shall be living at the death of my son, and if there be no grandchildren, then living, then to those persons who would be my legal heirs had I survived until that time,' who in this instance would have been, assuming grandchildren to be dead, as well as the son, the great grandchildren." The striking consideration about these attempted paraphrases is that the testator did not use the language suggested, but as I have pointed out said, so nearly as a layman might be expected to express himself clearly, almost the opposite.

Since, therefore, it is concededly clear, as I have shown, that " some words must be supplied " (*Connelly* v. *O'Brien, supra,* 409) to make the clause in question intelligible, I believe that what the testator had in mind was to say, not that he devised the property to his grandchildren or grandchild, but to his " grandchildren or child of them." His state of mind in this connection may be exemplified by assuming that he realized that his son might be survived by two or more grandchildren or by a single grandchild and a single great grandchild or several great grandchildren. In contemplation of any of these contingencies it would be quite apt to add " if there are any living," and perfectly natural to supplement it with the further proviso " if there are none living " (namely, if my ultimate direct line be wholly extinct) " then to my heirs." The grandchildren would, of course, take their parents' share ( *N. Y. Life Ins. Co.* v. *Winthrop, supra.*) He no doubt intended to use the word " child " in its generic or distributive sense. It is quite usual where the text or circumstances justify

it to interpret the words " child " or " children " as indicating issue. (*Palmer* v. *Horn,* 84 N. Y. 516, 521.)

Upon this construction the scheme of the will becomes intelligible and consistent. Were it necessary to indicate some recognized designation of the character of the devise under discussion, as I interpret it, it might quite properly be regarded as a substitutional one — the great grandchildren to take the share of their respective parents in case of their death before that of the life tenant. (*Lyons* v. *Ostrander,* 167 N. Y. 135, 138; *Matter of Evans,* 234 id. 42; *N. Y. Life Ins. Co.* v. *Winthrop, supra,* 105.) I have a sincere appreciation of the difficulty of attempting to ascertain the intentions of a testator. " Wills," said Lord COKE, " and the construction of them do more to perplex a man than any other learning." There is, however, an interesting and significant expression of view by Mr. Page in his work on Wills, second edition, section 806, page 1361: " The intention which the courts are attempting to ascertain by means of the principles and rules of construction is likely to be a standardized intention, that is, *the intention of the average testator,* rather than the actual intention, that is, the intention of the testator in question."

Whether the statement be strictly accurate or not, it is instructive as indicating the necessary weight which must be given to general considerations, such as the motives which actuate the average man and the terms in which the average man expresses his intentions. Not only is there an absence of any suggestion in the circumstances surrounding this testator of any desire to disinherit one branch of his son's descendants in favor of another on a contingency which is wholly without significance in this connection, but the very fact that in the first instance at least he made equal provisions for both indicates that he held them in equal affection. Moreover, in the instant case the descendants of the grandchild who would be disinherited by defendant's construction of the instrument are descendants of the grandson, the ones who would perpetuate the family name of the decedent — a consideration which, while not determinative, is surely usually present in the minds of most men, if for no other than sentimental reasons. (WILLARD BARTLETT, J., in *Matter of Miller, etc.,* 18 App. Div. 211, 215.)

Motion denied.