In the Matter of the Estate of SAM FLEISHFARB, Deceased.

Surrogate's Court, Kings County, May 7, 1934.

*Apfel & Apfel* [*Abraham I. Last* of counsel], for Morris Linden, a nephew.

*Mandelbaum & Finkelstein,* for the executor.

WINGATE, S. Since the objection of the widow to disallowance of her claim for $318 was overruled on the hearing, there remain for determination only certain questions of testamentary construction and of the identity of certain of the distributees entitled to take under the will.

By the " third " item testator gave the sum of $3,000 to his executor " to be deposited by him in trust for thirty (30) years for the following purposes: That the annual interest thereon is to be used annually for a Yahrzeit to commemorate the name of my deceased wife, Annie Fleishfarb." Upon the expiration of this period the principal is to be divided among the " then living female grand-children " of certain named persons. The " fourth " item is identical except that the annual interest is to be used for Yahrzeit to commemorate testator's own name, the remainder is to be equally divided among the " then living children " of another named person.

The executor advances the contention that these provisions are wholly void, which position is enthusiastically supported by all others connected with the case, with the single exception of the court.

It is a matter of common knowledge that in the Orthodox Jewish faith, Yahrzeit is an annual prayer for the repose of the soul of a dead person similar in purpose to masses in the Roman Catholic church.

In *Matter of Morris* (227 N. Y. 141, 144), Judge, now Chief Judge, POUND, writing for the unanimous court, upheld a residuary gift of $6,000 for the erection of a " ' modest tombstone ' " and the saying of masses, observing: " ' masses are religious ceremonials or observances of the church of which she was a member, and come within the religious or pious uses which are upheld as public char-

ities.' \* \* \* She could give her estate outright to any charity and she was free to dedicate it to this particular charity. \* \* \* The test of reasonableness has no place as between the next of kin and the charitable trust, and the court will not take the estate from the trustees to bestow it upon the next of kin in disregard of the expressed desires of testatrix, but will ' in a broad and liberal spirit ' uphold the will as it was written." This construction of a gift for religious ceremonials as being one for a charitable use, has been uniformly followed. (*Matter of Eppig,* 63 Misc. 613, 614; *Matter of Welch,* 105 id. 27, 28; *Matter of Atkinson,* 120 id. 186, 187; *Matter of Beck,* 130 id. 765, 766; *Matter of Werrick,* 135 id. 876, 877; *Matter of Smallman,* 138 id. 889, 894; *Matter of Cunningham,* 140 id. 91; *Matter of McArdle,* 147 id. 876, 882.)

It is equally well established that " section 12 of the Personal Property Law \* \* \* sanctions the creation of a charitable trust. This section relieves such trusts as are religious, educational, charitable or benevolent within the meaning of this provision of law, from the operation of the statute against perpetuities. \* \* \* The question to be determined is whether the trust attempted to be erected by the testatrix is a charitable trust within the meaning of this statute. If it is, it is not affected by the statute against perpetuities. If it is not, it is void because it creates a perpetuity." (*Matter of MacDowell,* 217 N. Y. 454, 459.) (See, also, *Matter of Davidge,* 200 App. Div. 437, 440; *Matter of Potts,* 205 id. 147, 150; affd., 236 N. Y. 658; *Matter of Olmstead,* 131 Misc. 238, 245; *Matter of Bowne,* 144 id. 668, 669.)

The syllogism demonstrating the conclusion of the validity of the charitable uses attempted to be set up in the will at bar requires merely the additional notation of the geometric truism that a part cannot be greater than the whole. Since the testator could validly have directed that the income of the specified funds should be devoted to the prescribed purposes for all of eternity, without measurement of lives, it is obvious that he was within his rights in making such a direction for a lesser portion thereof, namely, for a specified number of years. It follows that the primary charitable uses of these two trusts should be upheld.

The question of the validity of the gifts of the remainders of the trusts is an interesting one and apparently without precedent on the facts presented. Professor Gray (Gray Perp. § 748) and various other learned text writers appear to feel that the main, if not the sole, object of the New York statutes which are presently pertinent, " is to limit restraints upon alienation," and that they have thus departed from the essential purpose of the rule against perpetuities, which is the fixing of a " limit beyond which future

estates cannot be created." (Gray Perp. § 1; *Bancroft* v. *Maine State Sanatorium Assn.*, 119 Me. 56, 62; *Colonial Trust Co.* v. *Brown*, 105 Conn. 261, 279; 19 Mich. L. R. 235, 242.)

While the prevention of undue restraint on alienation is unquestionably the feature which is most commonly considered in this connection, authoritative decisions of this State abound in statements demonstrating that remoteness in vesting is an extremely cogent consideration in the determination of the validity of a testamentary gift. As is said in *Matter of Wilcox* (194 N. Y. 288, 306), "for a contingent limitation of a remainder in personal property to be valid, the contingency must be such as necessarily to occur within two lives in being at the death of the testator." (See, also, *Matter of Chittick*, 243 N. Y. 304, 319; *Seitz* v. *Faversham*, 205 id. 197, 202; *Fargo* v. *Squires*, 154 id. 250, 260; *Hillen* v. *Iselin*, 144 id. 365, 378; *Purdy* v. *Hayt*, 92 id. 446, 456.) It follows, in the case at bar, that since the remainders given to the children and grandchildren of the named persons who may be living at the end of thirty years from testator's death are class gifts (*Matter of King*, 200 N. Y. 189, 193; *Matter of Kimberly*, 150 id. 90, 93), they are future contingent bequests to those persons who may answer the respective descriptions at that time (*Matter of Ackerman*, 137 Misc. 910, 915; *Matter of Sheffer*, 139 id. 519, 524; *Matter of Leonard*, 143 id. 172, 183, 184; *Matter of Morningstar*, Id. 620, 628, 629), and cannot be demonstrated to vest within two lives in being at testator's death. They are, therefore, void for remoteness.

The invalidity of the remainders does not, however, taint the primary gifts. (*Matter of Franklin Trust Co.*, 190 App. Div. 575, 576; *Kalish* v. *Kalish*, 166 N. Y. 368, 375; *Matter of Terwilligar*, 135 Misc. 170, 182; affd., 230 App. Div. 763; *Matter of Stulman*, 146 Misc. 861, 867; *Matter of Burling*, 148 id. 835, 844; *Matter of Milhau*, 151 id. 283.) The primary charitable trusts will, therefore, be sustained, but their remainders will pass under the residuary clause of the will.

The residue is given to testator's brother Abraham and his sisters, Rachael and Inde, in equal shares. Since they have died, their children receive their benefits *per stirpes*. (Dec. Est. Law, § 47-a).

The final question propounded relates to the rights possessed by the widow as a result of the inserting in the residuary clause of the following language: " I hereby, give, devise and bequeath to my wife * * * the right and privilege of living and remaining in the premises now occupied by us at 398 Marcy Avenue * * * during her entire natural life without any costs, rentals or other expenses or disbursements to be paid by her for such right and privilege."

The building is a multiple family dwelling divided into a store and apartments, one of the latter having been occupied by the decedent during his lifetime. The premises as a whole pass to the residuary legatees.

It is the opinion of the court that the words "living and remaining" are to be construed as only granting a right of occupancy in the premises which partakes of the nature of an easement, and that she is merely exonerated from the payment of any sum for "rental" or use and occupation while she remains there, the meaning of the words employed both in connection with the right, and of the freedom from charge, being construable by application of the principle *noscitur a sociis*.

It follows that whereas the residuary devisees could not convey the property freed from the easement, they possess no duties in respect to it other than to refrain from any personal acts of interference with the quiet enjoyment thereof by the widow.

Proceed accordingly.