In the Matter of the Estate of HENRY WEIL, Deceased.

Surrogate's Court, Kings County, June 13, 1934.

*Watson & Willguss,* for the petitioner Adele S. Cootes.

*Wingate & Cullen,* for Henry W. Butler.

*Winthrop, Stimson, Putnam & Roberts,* for Katherine McCulloch.

*Cadwalader, Wickersham & Taft,* for Ethel Adelaide Field, individually and as executrix of Thomas Field, deceased.

*Powell Crichton,* for the Central Hanover Bank and Trust Company, as administrator d. b. n. of Carlie Aline Didrichsen, deceased.

*Sage, Gray, Todd & Sims,* for the Seamen's Church Institute of New York.

*Mitchell, Taylor, Capron & Marsh,* for the City Bank Farmers Trust Company, as executor, etc., of Julia Shaw, deceased.

WINGATE, S. The will, the interpretation of which is the subject-matter of the present proceeding, was executed on June 28, 1897, at a time when the testator was upwards of eighty-five years of age. He died on January seventh of the following year and the instrument was admitted to probate twenty days later.

After general bequests aggregating $403,500 and the devise of certain real property, he directed the erection of the residue of his estate into a trust, which was to continue " until the death of my said executor and Trustee * * *. and until the youngest grand child of my daughter Caroline living at the time of my death [said grand child being the child of Richard Sibley and of the said Caroline's daughter] shall arrive at the age of twenty-one years."

Disposal of the income of the trust during its continuance was directed in the " sixth " item of the will, and was given " One Fourth Part * * * to my daughter Caroline W. Field, and in case of her death to her grand children in equal shares.

" One Fourth Part thereof to my daughter Celia F. Wiley and in case of her death to her child.

" One Fourth Part thereof to my daughter Julia Shaw, and in case of her death to whomsoever she may appoint by Will, or other instrument in writing to receive the same.

" * * * One Fourth Part thereof to my daughter Sarah until she marries again, when and from which time she shall receive the sum of Four Hundred (400) Dollars a month only, the balance of such one-fourth part shall then and thereafter be paid to her son Harry Butler; and in case of her death, all of her One fourth part of net income shall be paid to him."

The remainder is distributed by the succeeding item, and since the present controversy centers upon its meaning, it will be quoted in full. It reads:

" Seventh. Upon the death of said Executor and Trustee herein-after named, and upon the arrival at twenty-one years of age of my great Grand Child aforesaid, all the residue and remainder of my said Estate including as part thereof all and every sum or sums of money by me at any time advanced, or paid to, for, or on account of any of my children and which I have charged to and against them respectively in my ledger or book of account (which charge shall be conclusive evidence of the fact of such indebtedness and of the account for all purposes under this Will) shall be divided into as many shares as shall equal the number of my children then living, together with those who may have died leaving a child or children, their lawful issue; and said share shall be thereupon paid over as follows:

" One of said shares to each of my children then living first deducting however, from each of said shares so paid over respectively, the total charge or indebtedness, appearing in my said ledger, or book of account, against the child receiving such share.

" In case of the death of any or either of my said children, the net share which the one so dying would have received, if living shall be paid to the child or children of such deceased, if any."

At the time of the making of the will the decedent had the following living descendants who were then of the ages indicated: Children: Caroline W. Field, fifty-three years, Sarah Butler, fifty years, Julia Shaw, forty-seven years, Celia F. Wiley, forty-five years. Grandchildren: Carlie Sibley, daughter of Caroline, thirty years; Henry W. Butler, son of Sarah, nineteen years; Katherine McCulloch, daughter of Celia, seven years. Great-grandchildren: Adele Cootes, daughter of Carlie, ten years; Carlie Didrichsen, daughter of Carlie, nine years.

All of these nine persons survived the testator.

The following are now living: Celia F. Wiley, daughter; Henry Butler and Katherine McCulloch, grandchildren, and Adele Cootes, great-grandchild.

The deaths of the others occurred as follows: Children: Caroline, January 7, 1916; Sarah, January 19, 1913; Julia, January 1, 1930. Granddaughter: Carlie Sibley, January 5, 1912. Great-granddaughter: Carlie Didrichsen, August 20, 1925.

The trustee named in the will was Thomas G. Field, who was born August 26, 1849, and died January 19, 1934. With his death the trust terminated, he having survived his granddaughter, Carlie Didrichsen, whose minority constituted the other measuring life thereof.

None of testator's daughters ever had any children subsequent to his death and the same applies to his granddaughter, Carlie Sibley.

Two questions are presented for determination, *first,* as to the persons who share in the remainder of the trust; and, *second,* the amounts which they are respectively entitled to receive.

It is, of course, primary that these questions are determinable solely from the words of the will when it is read in the light of the circumstances surrounding the testator at the time of its execution (*Matter of McCafferty,* 142 Misc. 371, 372; affd., 236 App. Div. 678; *Matter of Burling,* 148 Misc. 835, 838), and that the testator's intent is to be gathered from a reading of the testamentary document as a whole. (*Matter of Farkouh,* 134 Misc. 285, 286; *Matter of Kirkman,* Id. 527, 528; *Matter of Grauer,* 146 id. 469, 471; *Matter of Loomis,* 149 id. 417, 418.)

To this court the most impressive feature of the entire instrument is the extreme care which the testator evinced to effect equality

between the four branches of his immediate family. Not content with devoting one-fourth of the income of his residuary estate to each of his four children during the continuance of the trust, and directing that one-fourth of the actual principal thereof should become the property of each stock in so far as there were members of such stock in existence when the time for ultimate distribution should arrive, he went to almost unprecedented lengths in attempting to promote this equality by providing that in the computation of the amounts of the shares of principal which were to be received in ultimate possessory enjoyment, account should be taken of the sums advanced by him in his lifetime to the primary heads of each of the four stocks. The dominant underlying idea which permeates the entire testamentary plan is that of equality between the four stocks of his children.

Second only to this obvious basic intent is the desire to reserve for those possessing his own blood the chief beneficial enjoyment of his property. To Julie, his only childless daughter, who by reason of her age at the date of the execution of the instrument might be presumed to continue childless, he gave the power to appoint her share of the income to outsiders. This authority, however, is striking only by reason of its accentuation of testator's obviously dominant desire to restrict ultimate ownership to those of his blood, since in spite of the fact that because she would probably have no descendants, her share in the principal could not pass to others of her stock, he gave her no authority to divert it to persons possibly unrelated to himself. Testator's intent to preserve to those of his own blood the beneficial enjoyment of his property is further demonstrated by the direction that if his daughter Sarah remarried, her portion, even of the income, should be limited, the overplus thereof going to her son.

The final circumstance which appears worthy of especial note is the fact that the lives upon which the trust was limited were taken solely from Caroline's branch of the family, being those of her husband and her younger granddaughter, and the direction that in the event of Caroline's death, her share of the income of the trust should be paid to her grandchildren and not, as in the trusts for testator's other children, to her immediate offspring. That these circumstances have some significance seems patent.

The selection of the minority of Carlie Didrichsen as the second limiting life cannot be explained on the ground that it would give a longer duration to the trust than if measured by that of any other of decedent's descendants, since Celia's daughter, Katherine, was eighteen months younger than Carlie.

The only adequate explanation of the preference given to these great-grandchildren over their mother in the gift of income during the continuance of the trust lies in an affirmative preference for them over their mother, which is incompatible with an intent that they should not share in the remainder on the termination of the trust. There is also a potential significance in the limitation of the trust term. As noted, it was limited on the lives of Thomas W. Field, who at the date of the will was just short of forty-nine years of age, possessing an expectancy of approximately twenty-one years, and on the attainment of majority by his youngest grandchild, which date was only twelve years distant. That mere postponement of possessory enjoyment was not testator's motive for the erection of the trust is obvious, since there was every probability that by limiting it upon this grandchild's entire life he could have continued the trust for more than four times its possible duration under the instrument as executed, as she possessed a total expectancy of over forty-nine years at the time of the execution of the will. The only other common motive for withholding possessory enjoyment for a period is to enable a contemplated beneficiary to arrive at years of discretion, which is most commonly supposed to coincide with the attainment of legal majority. That it was this thought which testator had in mind in this connection seems to be a natural conclusion from the terms of the trust as an entirety.

It seems a logical conclusion, therefore, that testator contemplated that a portion of the principal would pass to these favored great-grandchildren and wished to assure, so far as possible, that they would have attained years of discretion when that time arrived.

Turning now to the testamentary language of devolution upon the termination of the trust, testator directs that the principal, plus advancements, " shall be divided into as many shares as shall equal the number of my children then living, together with those who may have died leaving a child or children, their lawful issue."

The crux of the question of interpretation concerns the meaning to be attributed to the last seven words quoted. At the termination of the trust, testator's daughter Celia was the only one still living of the original four. Julia had died without descendants; Sarah was dead, survived by a son, and Caroline had died, predeceased by her daughter, but survived by her two granddaughters.

It is argued on behalf of the estate of one of the last named that the words " their lawful issue " indicate, of themselves, the testamentary intent that all " issue," which at the date of the execution of this will clearly connoted " descendants " (*Matter of Corlies*, 150 Misc. 596, 598), should be taken into consideration in determining

the number of parts into which the corpus was to be divided. With this contention the court cannot agree. As a pure matter of grammatical construction, this is merely a modifying phrase, limiting the preceding word, " children." It was, according to testator's intention, not merely the existence of a " child or children " that should be the basis of setting aside a share of the corpus for a particular branch of his family, but these must be also " their lawful issue," meaning born of a legally existing marriage. (*Matter of Sheffer*, 139 Misc. 519, 520.) Whereas, therefore, the court cannot agree with the argument which would give these words the decisive effect attempted to be attributed to them, it is of the opinion that they have a persuasive force in the demonstration of testator's intent in a manner which will presently be noted.

Celia's branch of the family contends that the words " child or children " should be construed in their primary significance as immediate descendants, and it is unquestionable that an inference to that effect arises in the usual case. (*Matter of Schaufele*, 252 N. Y. 65, 67; *Matter of Pulis*, 220 id. 196, 204; *Matter of Harris*, 138 Misc. 287, 288; *Matter of Morningstar*, 143 id. 620, 627.) As pointed out in the *Schaufele* opinion, however, the words may be construed to include remoter descendants when other expressions or clauses or the general design and tenor of the will reveal such an intention on the part of the testator. In such cases this has frequently been done. (*Matter of Brown*, 93 N. Y. 295, 300; *Matter of Paton*, 111 id. 480, 487; *Prowitt* v. *Podman*, 37 id. 42, 53, and cases cited; *Pfender* v. *Depew*, 136 App. Div. 636, 639; *Matter of Tone*, 186 id. 361, 365; affd., 226 N. Y. 696; *Matter of Miller*, 18 App. Div. 211, 215; affd., *sub nom. Matter of Marshall*, 155 N. Y. 645; *Matter of Bender*, 44 Misc. 79, 81; *Matter of Faust*, 83 id. 250, 255; *Matter of Tracy*, 143 id. 800, 805.)

Turning now to the question of the effect to be attributed to the words " their lawful issue," to which reference has heretofore been made. It is a phrase qualifying the words " child or children." If these words be deemed to refer merely to testator's daughters, a situation closely approximating absurdity results. As noted, these daughters, at the time of the execution of the will were respectively forty-five, forty-seven, fifty and fifty-three years of age. Whereas the court would hardly have the temerity to assert that it is a matter of common knowledge that women of these ages are incapable of further child-bearing, it can be stated with confidence that such occurrences are rare, and that for a woman who had successfully withstood the temptations of liaison until the attainment of such an age, suddenly to succumb to extra-marital enticement to the extent of producing illegitimate progeny, would be

extraordinary to a degree. If, therefore, the words "child or children" in the will are to be construed as referring merely to testator's middle-aged or elderly daughters, the limitation respecting "lawful issue" cannot be considered other than as a wholly gratuitous insult to them. If, however, it receive the broader meaning of descendants, the limitation is both explicable and reasonable.

That testator fully realized the improbability, if not indeed impossibility, that his daughters would have further issue is indicated by his manner of disposal of the income of the trust following their deaths. Caroline's share was to go to her *grandchildren;* Celia's to her *child;* Sarah's to her *son;* Julia's to her appointee. Since then testator contemplated that additional issue for his children was out of the question, his reference to "lawful issue" as ultimate distributees must have been intended to cover the progeny of others than his immediate children.

The only branch of the family which is affected by this question is that of Caroline, whose daughter predeceased her by some four years. Had the latter survived her mother, even though she predeceased the termination of the trust, there could be no question but that a share of the corpus must have been set up for Caroline's branch of the family, under the express directions of the first paragraph of the "seventh" item of the will, since she would have come exactly within the most limited description of a child of testator "who may have died leaving a child or children, their lawful issue." If, then, Caroline's daughter, while surviving her mother, had predeceased the termination of the trust, and the same limited connotation of "child" as meaning primary descendant, were adopted in respect to the shares thus set apart, there would be no one within the description of the testator to whom such share was to be paid, since his language in this connection is that it "shall be paid to the child or children of such deceased, if any." As a result, there would be a share under the residuary clause which was not validly given and which must pass as intestate property. (*Matter of McCafferty*, 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Perelman*, 148 Misc. 906, 908; *Matter of Smallman*, 141 id. 796, 799.)

The testamentary intent must, of course, be ascertained as of the time of the execution of the will (*Matter of Hoffman*, 146 Misc. 535, 537; *Matter of Mehler*, 143 id. 63, 64; *Matter of Tuozzolo*, 141 id. 251, 253; *Matter of Smallman*, 138 id. 889, 896), and where two interpretations of a will are possible, that which, under any contingency, would avoid an intestacy is to be preferred. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of McGowan*, 134 Misc. 409, 411; affd., 228 App.

Div. 779; affd., 254 N. Y. 513; *Matter of Weissman*, 137 Misc. 113, 119; affd., 232 App. Div. 698; *Matter of Blasius*, 134 Misc. 753, 758.)

By adopting the interpretation in the will at bar that the word " children " means descendants, in the phrases, " have died leaving a child or children, their lawful issue," in the first paragraph of item " seventh," and " shall be paid to the child or children of such deceased, if any," in the third paragraph of the same item, intestacy, under any contingency where any descendant of one of testator's children is living, is avoided; testator's dominant purpose of equality between the four branches of his family is attained (*Matter of Stulman*, 146 Misc. 861, 878; *Matter of Schrier*, 145 id. 593, 597, 598; *Matter of Grefe*, 140 id. 134, 138; *Matter of Gebhardt*, 139 id. 775, 779), and his restriction against participation by illegitimates is made intelligible.

As is said in *Matter of Brown* (93 N. Y. 295, at p. 300): " It is not reasonable to impute to the testator the intention to exclude wholly from the inheritance, the descendants of either of his daughters, a result which, upon the construction claimed by the appellants, would necessarily follow should such daughter leave her surviving no living child, but only the descendants of a deceased child or children." (See, also, *Scott* v. *Guernsey*, 48 N. Y. 106, 121; *Matter of Miller*, 18 App. Div. 211, 215; *Pfender* v. *Depew*, 136 id. 636, 640.) " The word ' children ' is a flexible expression, and we think that meaning should be preferred, when the reason of the thing sustains it, which permits the children of a deceased child to inherit." (*Matter of Paton*, 111 N. Y. 480, 486.)

It follows that the trust principal is to be divided into three shares, one of which is to be appropriated to Caroline's branch of the family, another for that of Celia and the final one for that of Sarah. The manner of devolution of the last two furnishes no difficulty since Celia is living and Sarah's son, Henry, is also alive.

In respect to the distribution of that belonging to Caroline's branch, a further controversy exists as to whether this is to go wholly to Adele S. Cootes, who is Caroline's sole surviving granddaughter, or whether it is to be divided between her and the estate of her sister who predeceased the termination of the trust. Counsel for the latter have submitted a monumental brief of over 100 pages in which they contend that the interest of the deceased granddaughter was vested and thus passes to her estate. In the opinion of the court their argument is refuted by the last two words of item " seventh " of the will. The share in question, when the division into parts has been made, is, in the event of the predecease of the particular daughter of the testator to whose stock it is dedi-

cated, to " be paid to the child or children [which has been construed ' descendant '] of such deceased, *if any.*" (Italics not in original.)

The only possible meaning of these italicized words is " if any are living at such time of distribution." It cannot mean " if any ever lived," since if none ever lived and the particular daughter were dead, no share could, under the directions of the first paragraph of item " seventh," be set aside for this particular stock.

The gift is clearly one to a class (*Matter of Fleishfarb*, 151 Misc. 399), and is, therefore, payable only to the persons answering to the description at the time of possession. (*Matter of Harned*, 138 Misc. 546, 548; affd., 234 App. Div. 796; *Matter of Ackerman*, 137 Misc. 910, 915; *Matter of Sheffer*, 139 id. 519, 524; *Matter of Leonard*, 143 id. 172, 183, 184; *Matter of Morningstar*, Id. 620, 628.)

Upon the deaths of their mother and grandmother each of these great-grandchildren received a contingently vested estate, which is one vested subject to being divested in the event of death prior to the arrival of the time for distribution. (*Matter of Leonard*, 143 Misc. 172, 175, 176; *Matter of Burling*, 148 id. 835, 841.) In the case of Carlie, such divestment occurred on her death, wherefore she did not comply with the prerequisite condition to receipt of a benefit, connoted by the words " if living."

It is entirely true that the class closed upon the death of their mother and grandmother so far as additional admissions thereto were concerned. It did not, however, close so far as egress from the class was concerned, since the direction to divide and pay over a share was made only in respect to the persons composing the class at the time of distribution, " if any."

Not only is this result obvious on the language of the will which attached futurity to the gift, but it effectuates the obvious intent of the testator, hereinbefore noted, to limit beneficial enjoyment of the principal to those possessing his own blood, with which desire the law is in hearty agreement. (*Matter of Hopner*, 148 Misc. 748, 751, 752; *Matter of Myers*, 137 id. 868, 872; *Matter of Gurlitz*, 134 id. 160, 163.)

It follows, therefore, that one share of the principal is payable to Henry W. Butler, one to Katherine McCulloch, as assignee of her mother, Celia F. Wiley, and one to Adele S. Cootes.

The final question in the case concerns the adjustments to be made in the various distributive shares by reason of advancements made by the testator during his lifetime.

The only controversy in this regard relates to the sum chargeable to the share of testator's daughter Sarah. Her account begins on page 106 of testator's account book with an entry dated February 16, 1876, the page showing principal advances of $10,000 and three

interest items, two of which are canceled by credit entries. The next page on which entries appear is page 9 of the " new book " on which all previous entries are repeated. No additional principal entries here appear, but there are additional interest debits, the last in 1892, amounting to $7,750 and bringing the total debit to $18,049.58. This total is carried forward to page 2 of the " new ledger," the first entry on which, on January 3, 1893, reads: " To advances made to Chas. Butler on notes of S. J. Butler $18,049.58." The only remaining entries in this account are of interest, totaling $2,500, and bringing the total to $20,549.58.

On page 11 of the " new book " there is another account relating to this same daughter. At the top of the page is written in handwriting conceded to be that of testator: " Sarah Jane Butler to Henry Weil for Monny advansed frome November 1st, 1877, all previus advanse not charged, counted as gift." The first entry is in 1877 and is November, December and January board at fifty dollars a month. The page is completely filled with entries, the vast majority of which are debits of cash. The total to October 1, 1884, amounts to $8,077. There is no item of interest entered. The account is continued on pages 12 to 14, inclusive, substantially all of the items being of cash advanced or bills paid. On none of these pages does any debit for interest appear. The total stated to be carried forward to page 5 of the " New Ledger " is $40,194. This is an error, since page 5 is devoted to the account of Celia F. Wiley. On page 2, however, there appears to be a continuation of Sarah's account which starts with a debit balance of $41,502 on January 3, 1893. The last entry is dated January 3, 1898, the total then being $67,002. All of the entries in this latest book are of " checks." There is no charge for interest.

The accounts carried by testator in respect to the affairs of his other daughters have been introduced in evidence, their striking characteristic being that in no single instance was any interest charged against them.

Adverting to the language of the will, the testator directs that there shall be included as a part of the sum for ultimate division " all and every sum or sums of money by me at any time advanced, or paid to, for, or on account of any of my children and *which I have charged* to and against them respectively in my ledger or book of account." (Italics not in original.)

It is obvious that testator considered the sums aggregating $10,000 which he advanced " to Charles Butler," as he himself indicates, on a footing different from the sums paid to his children individually. On the former he consistently charged interest; on none of the latter was this course pursued. In view of the obviously

dominant purpose discernible in all of his dealings with his children to treat all with absolute equality, this circumstance of itself creates an inference that he did not deem these sums advanced to Charles Butler prior to July, 1877, to be charges against Sarah. This presumption is turned into a virtual certainty by the notation in testator's own hand when opening her new account in November, 1877; " all previous advances not charged, counted as a gift."

It appears obvious that it was this condition which he had in mind in specifying in the words of his will which have been italicized that the only sums to be taken into consideration were those " which I have charged." So far as Sarah was concerned, these original advances were " not charged." This disposes of this account, since the interest subsequently debited cannot on any proper interpretation come within the description of " sums of money by me * * * advanced, or paid to, for, or on account of " this child.

The court, therefore, determines that the sum of $67,002 shown by the account started in November, 1877, is alone chargeable to Sarah's branch of the family. The sums deductible from the other distributive shares are not in dispute.

Proceed accordingly.