In the Matter of the Estate of MARY DOOLEY, Deceased.

Surrogate's Court, Kings County, November 23, 1934.

*Roe & Kramer,* for the executors.

*Austin, Austin, Woolley & DuPont,* for Loretta J. Dooley Flynn, residuary legatee.

*John G. Donovan,* for Jane Dooley.

*Frederick A. Keck,* special guardian for Edward E. Stapleton, Jr.

*Edward J. McCrossin,* for the Roman Catholic Orphan Asylum Society of Brooklyn.

*Gillespie & O'Connor,* for the Trustees of St. Patrick's Cathedral.

WINGATE, S.   In view of the familiar principle that the personalty of a decedent is the primary fund for payment of general legacies and that these will not be held to be a charge on realty passing under a residuary clause in the absence of an express contrary direction in the will or a " clear intent to the contrary " (*Bevan* v. *Cooper,* 72 N. Y. 317, 322; *Matter of Lilienthal,* 139 Misc. 225, 229), the burden rests upon any person contending for a diverse result to demonstrate in any given case the presence of one or the other of the conditions precedent required for the avoidance of the usual rule.

In the case at bar an express direction is patently absent from the language of the will. An effort has been made to meet the second condition by a demonstration of the particular extraneous circumstances surrounding the testatrix at the time of the execution of the document, which period is, of course, alone pertinent as bearing upon her intention in respect to the desired devolution of her property. (*Matter of Weil*, 151 Misc. 841, 848, and authorities there cited.)

The demonstration in this connection is that at the time of the execution of the will, testatrix possessed personal property of a value of $5,293.78 and realty worth about $15,000. She makes general bequests totalling $13,250 and grants a power to her executors to sell the real estate. Were this the total demonstration, the pertinent authorities (reviewed in *extenso* in *Matter of Lilienthal*, 139 Misc. 225, 235) would render a determination of an intent to charge the realty substantially inevitable.

It has, however, further been shown that at the date of the execution of the will testatrix was in excellent health and spirits and had for approximately a year been in receipt of the income of a trust erected by the will of her son in a principal sum of $150,000, which so far exceeded her requirements for support that she had actually saved and accumulated approximately $4,000 in the interval.

At the time of her death, about twenty-one months after the execution of her testamentary document, her personal assets had increased from $5,293.78 to $12,238.77, or approximately to a point $1,000 less than the face of her general bequests. Had she lived only about a year beyond the date of her death, and continued the average saving which she had effected prior thereto, her personal assets would have been more than sufficient to solve not only all of the general legacies after paying funeral and administration expenses, but to leave a surplus.

Testatrix's age has not been shown, so that her reasonable expectancy of life is, therefore, impossible of calculation. It has, however, been demonstrated by the affidavit of one of the executors, who is apparently entirely disinterested in the result, submitted in lieu of oral proof, that " so far as deponent knows, the said Mary Dooley on the date of the execution of her will was in good health and had no reasonable expectation of an early demise."

The leading case on the subject of the raising of an inference of a charge, by reason of a known inadequacy of personalty at the time of the execution of the will, is *Briggs* v. *Carroll* (117 N. Y. 288). Its opinion (at p. 292) contains the following presently significant limitation of the rule: " If the disparity, even though serious, is such that the testator * * * might reasonably expect to repair

the deficiency before his death, the ground for inferring an intention to charge the land would disappear." (See, also, *Carley* v. *Harper*, 219 N. Y. 295, 301; *Matter of Lilienthal*, 139 Misc. 225, 237.)

Obviously under the facts here demonstrated of the good health and expectation of continuance of life of the testatrix, and that for almost a year prior to the execution of the will she had been in receipt of the income of a trust for her life from which she could readily save about $4,000 a year after full satisfaction of her needs, it cannot be denied that she " might reasonably expect to repair the deficiency before her death."

With this demonstration " the ground for inferring an intention to charge the land would disappear " and the usual presumption would obtain that testatrix intended that the general legacies should be payable from her personalty alone.

Nothing else has been shown in respect to the circumstances surrounding the testatrix which has any value as indicating an intent contrary to that usually inferred. The sixteen general legacies are payable, fourteen to persons and institutions bearing no relationship to testatrix, and one each to a cousin and a niece. Those to utter strangers account for approximately eighty-five per cent of this total. The residue is given to the wife of testatrix's only son. In the absence of any demonstration that the testatrix entertained a more affectionate regard for the niece and cousin than for her daughter-in-law, the court would hesitate to indulge an inference of the wish of the testatrix to benefit the former at the expense of the latter even though they received one hundred per cent instead of a mere fifteen per cent of the general gifts. *A fortiori*, no inference to that effect can here be indulged.

It follows that the general legatees have failed to sustain their burden of demonstrating a basis for an inference of intention contrary to the customary rule; wherefore their legacies cannot be deemed a charge on the residuary realty.

Enter decree on notice accordingly.