In the Matter of the Estate of JOHN R. CRESPI, Deceased.

Surrogate's Court, Kings County, February 10, 1936.

*Strauss & Abrahams* [*Jerome A. Strauss* of counsel], for the executors, applicants for construction.

*Albert D. Schanzer*, special guardian, for the infant legatees and distributees.

*Joseph Krieger*, for Aaron Crespi, objectant legatee to account, and for Ralph E. Crespi, objectant to account and nephew-legatees.

*Abraham Feit*, for Jack E. Crespi, objectant to account.

WINGATE, S. On the chief question of testamentary interpretation which has been submitted, all of the parties who have filed briefs, with the exception of the special guardian and executors, placed their sole reliance upon allegedly similar language of other testamentary documents construed by this or other courts. In so doing they have overlooked the basic principle that particular precedents interpreting varying language are wholly unreliable and unhelpful guides in the attainment of a result in a litigation of this type. (*Matter of Watson*, 262 N. Y. 284, 297; *Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113, 114; affd. on opinion of this court, 232 App. Div. 698; *Matter of Milhau*, 151 Misc. 283, 285; *Matter of Corlies*, 150 id. 596, 597, 598; affd., 242 App. Div. 703.) As is the substantially invariable rule, the language of the wills in the cases cited was in each instance materially different from that at bar, wherefore the decisions interpreting them are wholly irrelevant to the questions here propounded.

In any question of construction the sole problem presented is as to what the particular testator intended (*Matter of Burling*, 148 Misc. 835, 838; *Matter of Bell*, 141 id. 720, 721; *Matter of Sheffer*, 139 id. 519, 522; *Matter of Gargiulo*, 138 id. 90, 98) at the moment the will was executed (*Matter of Weil*, 151 Misc. 841, 848; affd., 245 App. Div. 822; *Matter of Dooley*, 153 Misc. 533, 534; *Matter of Hoffman*, 146 id. 535, 537; *Matter of Mann*, 145 id. 360, 361), by the language employed (*Matter of Stulman*, 146 Misc. 861, 865; *Matter of Ryan*, 136 id. 261, 264; *Matter of Gorra*, 135 id. 93, 95),

when the will is read as a whole (*Matter of Stutzer,* 155 Misc. 301, 304; *Matter of Cronin,* 147 id. 611, 612; *Matter of Mann,* 138 id. 42, 49) in the light of the circumstances surrounding him at that time (*Matter of McCafferty,* 142 Misc. 371, 372; affd., 236 App. Div. 678; *Matter of Kellogg,* 156 Misc. 703, 705; *Matter of Smallman,* 138 id. 889, 896; *Matter of Enright,* Id. 853, 858), and the pertinent existing law. (*Matter of Cohen,* 150 Misc. 17, 22; *Matter of Sheffer,* 139 id. 519, 522.)

It is obvious, therefore, that each task of testamentary interpretation must begin *de novo* with the will itself as the basic and only reliable guide, and with the general principles or so-called canons of construction serving merely as subsidiary aids where the terms of the document themselves leave the court in doubt as to the intentions of the testator. (*Matter of Hopner,* 148 Misc. 748, 750; *Matter of Morningstar,* 143 id. 620, 622; *Matter of Quinby,* 134 id. 296, 299; *Matter of Gurlitz,* Id. 160, 163.)

The will at bar is dated, and purports to have been executed, on June 19, 1926. It contains fourteen dispositive items. By the second a charitable trust of $5,000 was erected. The third made a $1,500 bequest for burial plot upkeep. The succeeding three gave legacies of $1,000 each to three sisters, Veda Eskanazi, Esther Cohn and Simcha Samarel. Then follow seven items numbered seventh to twelfth-a, inclusive, which are the subject-matter of the present controversy. The seventh reads: " I give and bequeath unto my beloved sister Simcha Samarel the sum of one thousand ($1000) dollars, in trust, however, for her son Meyer to be used for his education."

The succeeding six items provide similar gifts: eighth, of $2,000 to a named brother, " in trust, however, to be used for the education of his children;" ninth, of $500, to a named brother-in-law, with identical wording; twelfth, of $500 to a named cousin, with identical wording; tenth, of $1,000 to a named nephew, " in trust, however, to be used for the education of his child;" eleventh and twelfth-a, respectively, resemble the seventh in that the beneficiary of the so-called trust is in each case a named son of the putative trustee.

By the thirteenth item a legacy of $1,000 was given to an employee. The fourteenth is the residuary clause which erects a trust for the benefit of testator's wife and children, the terms of which are presently immaterial.

This analysis renders the testamentary plan entirely clear. His four aims, in the order adopted in the will, were, *first,* to make a charitable gift; *second,* to give recognition to the ties of blood and marriage outside his own immediate family; *third,* to reward faithful service, and *fourth,* to provide for his wife and children.

Only the second class of gifts is presently material. These were of two varieties, namely, *first,* direct bequests to the beneficiaries themselves, and, *second,* indirect benefits by provision for the education of their children. The main contention at bar is by the parents of the beneficiaries of this second subclass of gifts to the effect that they should be construed as direct gifts to the parents themselves, which conferred no rights or benefits whatsoever upon the children for whom they were expressly stated to be in trust.

The answers to this position are numerous. The first is supplied by the language of the will itself in the fact that in the sixth item the testator by apt words gave a personal general legacy to his sister Simcha, and in the seventh gave her a like sum " in trust " for the education of her son. It is a familiar principle of construction that where a testator in one portion of his will makes a gift of one variety by appropriate language, his use of a divergent mode of expression at another point raises a strong inference of a different intention. (*Matter of McGowan,* 134 Misc. 409, 410, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of McCafferty,* 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Corlies,* 150 Misc. 596, 599; affd., 242 App. Div. 703; *Matter of Mann,* 138 Misc. 42, 52.) Since the gift in the sixth item conferred a direct benefit upon Simcha, it follows, by the application of this principle that when he gave her the additional $1,000 in trust for the education of her son, he did not intend to duplicate the immediately previous gift, but meant just what he said, namely, to confer an equitable benefit upon such son.

This point having been attained, and it being determined that when the testator made a gift in item seventh in trust for the education of the sister's son he meant the gift to be for the benefit of the son, and not for that of the parent, the converse of the principle just noted becomes applicable. This is that where, in a will, which, like the present, gives internal evidence of experienced draftsmanship, successive gifts are made in substantially identical language, an inference arises that the testamentary intent was similar in all. (*Matter of Durant,* 231 N. Y. 41, 47; *Carr* v. *Smith,* 25 App. Div. 214, 217; affd., 161 N. Y. 636; *Fell* v. *McCready,* 236 App. Div. 390, 397; affd., 263 N. Y. 602; *Matter of Leonard,* 143 Misc. 172, 184.) Since, in item seventh the testator obviously intended not to benefit the purported trustee, but her child, the use of substantially identical language in items eighth to twelfth-a, inclusive, raises a strong inference of a like intent in respect to the several gifts there made. This inference is not contradicted by any other language of the instrument.

The contrary argument of Ralph E. Crespi, based on the fact that at the time of the execution of the will he had no child, loses all validity by his admission that less than nine months later a child was born to him. The unborn infant was, therefore, alive at the time the will was executed (*Matter of Gebhardt*, 139 Misc. 775, 776) and was within the description of a child (*Matter of Wolf*, 140 Misc. 595, 596). That the actual state of facts in this regard was actually within the knowledge and contemplation of the testator may be inferred from the fact that in respect to this particular gift, under the tenth item, the trust was stated to be " for the education of his *child* " (italics not in original), whereas under the two previous similar items, the word " *children* " was employed.

Of the many additional applicable principles tending to the same result, it will be sufficient to note that adoption of the contention that the gifts were outright to the purported trustees would, in each instance, require the deletion of these express words of limitation implying the erection of trusts, which is an extreme and dangerous expedient. (*Matter of Nebe*, 155 Misc. 392, 395; *Matter of Bates*, 152 id. 627, 629; *Matter of McEvoy*, 139 id. 349, 352; *Matter of Kirkman*, 134 id. 527, 528), to which resort should never be had unless it be found impossible to give intelligible effect to all the words employed. (*Matter of Frank*, 153 Misc. 688, 690; *Matter of Reppucci*, 145 id. 671, 677, 678; *Matter of Schrier*, Id. 593, 597; *Matter of Howells*, Id. 557, 562.)

It follows that items seventh to twelfth-a are to be construed as erecting trusts of the several stated sums in the hands of the respective donees, as trustees, the income and principal of which are to be employed for the education of their respective children. No attack has been made on the validity of these trusts under the appropriate sections of the Real and Personal Property Laws, wherefore this question has not been considered.

The final question propounded relates to the effectiveness of the gift in item second of the will, which purports to erect a trust with a principal fund of $5,000 " for the following purposes: To pay the income thereof to such charities as they [the trustees] in their discretion may desire, for a period of twenty years, and at the end of twenty years to distribute the said sum of Five Thousand Dollars to such charities as in their discretion they may desire."

Whereas the executors have included this direction in their prayer for construction, none of the parties has vouchsafed any intimation as to the nature of their doubt concerning the meaning of the language or suggested any potential invalidity in the direction. The court is, therefore, uninformed as to what sort of statement is desired from it in this connection.

Being obviously for a charitable purpose, the trust is valid although measured by years instead of lives. (*Matter of Fleishfarb,* 151 Misc. 399, 401; *Matter of Stulman,* 146 id. 861, 867; *Matter of Blasius,* 134 id. 753, 755.) It is also unquestionably effective by reason of the operation of the *cy pres* doctrine in spite of the indefiniteness of the beneficiaries. (Pers. Prop. Law, § 12; *Matter of Durbrow,* 245 N. Y. 469, 476; *Matter of Kelley,* 138 Misc. 190, 192.)

Upon the disposal of the objections which have been interposed to the account, a decree embodying the substance of the foregoing interpretations may be entered on notice.